# Illinois Official Reports

## Appellate Court

***People v. Burns*, 2015 IL App (1st) 121928**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LATRICE BURNS, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-12-1928 |
| Filed | December 21, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 05-CR-8598; the Hon. Clayton J. Crane, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and S. Amanda Ingram, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Marci Jacobs, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Justices Connors and Delort concurred in the judgment and opinion. |

**OPINION**

¶ 1        On May 12, 2014, this court entered an order affirming the trial court's summary dismissal of defendant-appellant Latrice Burns' *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2012)). On September 30, 2015, the Illinois Supreme Court entered a supervisory order directing us to vacate our May 2014 order and reconsider the matter in light of our supreme court's subsequent decision in *People v. Allen*, 2015 IL 113135. *People v. Burns*, No. 117715 (Ill. Sept. 30, 2015). We now conclude that pursuant to *Allen*, the defendant's postconviction petition was improperly dismissed at the first stage of postconviction proceedings. Accordingly, we vacate our May 2014 order, reverse the trial court's summary dismissal of the defendant's petition, and remand the matter for second-stage postconviction proceedings.

¶ 2                                                   BACKGROUND

¶ 3        The defendant appeals from an order entered by the circuit court of Cook County which summarily dismissed her *pro se* petition for relief under the Act. She contends that her petition set forth a claim with an arguable basis in law and fact that her trial counsel was ineffective for failing to call a codefendant whose testimony would have been exculpatory.

¶ 4        After a jury trial, the defendant was convicted of first degree murder and armed robbery. The State's theory at trial was that the defendant was accountable for the actions of two men, Dorwin Davis (Davis) and William Kenlow (Kenlow), who robbed and shot to death the victim, Lionell Reed, on March 17, 2005. The State's primary evidence against defendant consisted of statements she made to investigating authorities after the incident. The defendant, who testified in her own defense, denied that she knew of Davis and Kenlow's plan to rob the victim and asserted that her statements were coerced and untruthful.

¶ 5        At trial, Assistant State's Attorney Cathleen Dillon testified about a videotaped statement the defendant made after the shooting. In that statement, which was presented to the jury, the defendant stated that Davis was her ex-boyfriend and she knew Kenlow from the neighborhood. In the afternoon of March 17, 2005, Davis called the defendant to ask if she would drive him to buy shoes from a man who sold them on the street. Later, the defendant picked up Davis and Kenlow and drove them to "get the shoes" from the victim, who was supposedly at 95th Street and the Dan Ryan Expressway (Dan Ryan). On the way, Kenlow asked Davis how they were going to obtain the shoes. Davis said he would "[beat] the man ass and take the shoes," and Kenlow added that "we might as well lay him down or lay him out and take the car too." The defendant understood this to mean that Kenlow suggested that he and Davis shoot the victim. Davis responded that they only needed to take the shoes.

¶ 6        After they arrived at 95th Street and the Dan Ryan, Davis and Kenlow did not see the intended victim. Davis used the defendant's cellular phone to call the victim, who directed Davis to meet him nearby. The defendant drove Davis and Kenlow to that location and parked, whereupon Davis left to get the shoes while Kenlow stayed in the car. At that point, the defendant claimed that she thought Davis would only beat the victim and take the shoes. While the defendant and Kenlow waited in the defendant's car, Kenlow received a call from Davis asking for $10 because he was "short." Kenlow left the car to meet Davis. The defendant waited in the car for Davis and Kenlow.

¶ 7     A few minutes later, the defendant heard a gunshot and saw Davis and Kenlow running toward her car, with Davis carrying a box of shoes. The defendant unlocked the car door for Davis and Kenlow. When the defendant asked what happened, they told her to "go" because someone was shooting. The defendant drove away. Soon after, the defendant's car was stopped by the police.

¶ 8     Detective Cedric Parks testified about a statement that the defendant made to him after the incident, which recounted largely the same events that the defendant described in her videotaped statement. Additionally, the defendant told Detective Parks that after her car was stopped, police recovered a gun from the backseat.

¶ 9     The State presented evidence that the victim died of a gunshot wound to the chest. Additionally, a test for gunshot residue was positive for Davis and negative for Kenlow.

¶ 10    Testifying in her defense, the defendant asserted that she knew nothing about plans to rob and kill the victim, and that she thought Davis was planning to buy shoes. She testified that Davis asked her whether she would take him to buy shoes from a man who sold them, and though she was reluctant at first, she eventually agreed. Later, she drove Davis and Kenlow to 95th Street and the Dan Ryan to make the purchase. The defendant denied that Davis and Kenlow discussed planning a robbery on the way to meet the victim. When they arrived and did not see the man who sold shoes, Davis used the defendant's cellular phone to call him, and then directed the defendant to a location nearby. After Davis made a second call, he left the car while Kenlow remained in the car. Davis then called Kenlow to ask for $10 because he was "short." Kenlow agreed to bring $10 to Davis. When Kenlow left the car, the defendant believed he was going to give Davis $10. The defendant then heard a gunshot and saw Davis and Kenlow running toward her car. This prompted the defendant to think that someone may have been chasing or shooting at them. Davis and Kenlow entered the car and told the defendant to "go" because someone was shooting. The defendant drove away and was soon stopped by the police.

¶ 11    The defendant testified that when she was being questioned by detectives, she repeatedly told them that she did not know about the robbery but was told she was lying. Additionally, Detective Parks told the defendant that Davis and Kenlow had implicated her in the robbery; that all three of them would be charged with murder; and that she needed to "start talking." According to the defendant, Detective Parks told her that if she said she knew about the robbery, she would go home. Eventually, she told the detective "what he wanted to hear." The defendant testified that her statement to the assistant State's Attorney was true "except for the part about me knowing about the robbery." The defendant testified that she had thought that what she said on the videotape did not matter because she would be going home.

¶ 12    Following deliberations, the jury found the defendant guilty of first degree murder and armed robbery and she was sentenced to consecutive prison terms for those offenses.

¶ 13    On direct appeal, the defendant argued that her guilt was not established beyond a reasonable doubt and that she was entitled to a new trial because: (1) the trial court prevented her from fully presenting her defense; (2) her trial counsel was ineffective for failing to request jury instructions on withdrawal and a separate jury verdict form for felony murder; (3) her trial counsel presented final argument that diminished the effect of her character witnesses; and (4) the prosecutor denied her a fair trial by improperly denigrating that same character evidence. On August 27, 2008, this court affirmed the defendant's convictions and sentences. *People v.*

*Burns*, No. 1-06-1026 (2008) (unpublished order under Supreme Court Rule 23), *appeal denied*, No. 107648 (Ill. Jan. 28, 2009).

¶ 14    The defendant filed a *pro se* postconviction petition on September 10, 2010. The defendant alleged, among other issues, that her sixth amendment right to effective assistance of counsel (U.S. Const., art. VI) was violated because her counsel refused to "try to get one of [her] 'willing codefendants' on the stand" when she asked him to do so. The defendant averred that this codefendant could have testified to the fact that she "knew nothing about a scam" to commit a crime. However, her counsel refused out of concern that the codefendant might "flip the script" on her.

¶ 15    Attached to the defendant's postconviction petition was an affidavit from Davis, in which he recounted the events of March 17, 2005. In that document, he claims that he called the defendant to ask if she could drive him to buy shoes and that she later picked up Davis and Kenlow. While the defendant was driving, Davis called the person from whom he planned to buy shoes and agreed to meet at a specific location. "Nothing was discussed" on the way to that location and they listened to the car radio. When they arrived at 95th Street, the defendant let Davis out of the car and went to park the car. Between the time Davis called the defendant earlier in the day and when he left the car, they "never talked about anything concerning any crimes or criminal behavior because there was nothing taking place." Davis further averred that "the only thing [defendant] was doing is driving me to purchase some [shoes] and that is the extent [of] her knowledge of anything that transpired that day." Davis' affidavit, which was attached to the defendant's petition, was not notarized.

¶ 16    Following the affidavit was a document signed and dated by Davis that stated:

"Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109, I declare, under penalty of perjury, that everything contained herein is true and accurate to the best of my knowledge and belief. I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith."

¶ 17    On December 3, 2010, the circuit court dismissed defendant's petition as frivolous and patently without merit. In part, the trial court found that counsel's explanation for not calling Davis–fear that he could testify unfavorably–supported the conclusion that counsel's decision was sound trial strategy.

¶ 18    The defendant filed a notice of appeal on September 12, 2013. On May 12, 2014, this court issued an order in which we agreed with the State's argument that the defendant's petition was properly dismissed because Davis's affidavit was unsworn and in violation of section 122-2 of the Act, which states that a postconviction petition shall attach "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2012). In affirming the dismissal of the defendant's petition, we held that Davis's affidavit failed to comply with section 122-2 because the affidavit was not notarized, the defendant provided no explanation as to why she could not obtain a notarized affidavit, and there was no other evidence to support the allegations in the affidavit. We further noted that Davis's affidavit did not affirmatively state that he was willing to waive his right against self-incrimination to testify on the defendant's behalf.

¶ 19    On September 30, 2015, our supreme court issued a supervisory order directing us to vacate our May 2014 order and to reconsider the matter to determine if another result was

- 4 -

warranted in light of its subsequent decision in *People v. Allen*, 2015 IL 113135.

¶ 20                                          ANALYSIS

¶ 21    Upon consideration of our supreme court's decision in *Allen*, we conclude that this case warrants reversal of the trial court's first-stage dismissal of the defendant's petition.

¶ 22    The *Allen* decision concerned a postconviction petition in which the defendant alleged his innocence of the underlying murder and robbery and claimed that his conviction resulted from perjury and coerced confessions. *Id.* ¶ 14. Attached to his petition was a signed statement purporting to be from an inmate named Robert Langford (Langford statement), which certified that it was made under penalty of perjury. *Id.* The Langford statement claimed that Langford and an accomplice had killed the victim and that the defendant was innocent. *Id.*

¶ 23    The circuit court dismissed the petition as frivolous because " 'Langford's statement is not an affidavit since it is not a sworn statement and is not notarized,' " further noting that " 'Langford does not even state that he would testify to these facts on behalf of petitioner.' " *Id.* ¶ 15. The appellate court affirmed the dismissal "due to the lack of notarization" and found that the Langford statement would not qualify as an affidavit or " 'other evidence' " necessary to support a petition under section 122-2 of the Act. *Id.* ¶ 17 (quoting 725 ILCS 5/122-2 (West 2008)).

¶ 24    The Illinois Supreme Court, although agreeing that the Langford statement was "not an affidavit" without a notarization (*id.* ¶ 31), held that this fact alone did *not* warrant summary dismissal at the *first stage* of postconviction proceedings. The supreme court explained that "[a]t the first stage, the court considers the petition's substantive virtue rather than its procedural compliance." (Internal quotation marks omitted.) *Id.* ¶ 24. Our supreme court went on to hold that "[l]ack of notarization here does not prevent the court from reviewing the petition's substantive virtue" and "does not limit the *** identification of the sources, character, and availability of evidence alleged to support the petition." (Internal quotation marks omitted.) *Id.* ¶ 34. The court thus held that the "failure to notarize does not leave the petition with no arguable basis either in law or in fact," and did not make the petition "frivolous or patently without merit." (Internal quotation marks omitted.) *Id.* The court concluded that "the circuit court may not dismiss at the first stage solely for failure to notarize a statement styled as an evidentiary affidavit," although "the State may challenge this nonjurisdictional procedural defect at the second stage of proceedings." *Id.* ¶ 35.

¶ 25    The *Allen* court also indicated that even a statement without notarization may still constitute "other evidence" supporting a petition pursuant to section 122-2 of the Act. (Internal quotation marks omitted.) *Id.* ¶ 34. The court rejected the State's argument that such evidence must be in admissible form, instead holding that "[i]t is enough for first-stage purposes that the defendant has provided substantive evidentiary content showing his claims are capable of corroboration and independent verification." *Id.* ¶ 37.

¶ 26    Separately, the supreme court in *Allen* also held that summary dismissal was improper despite the fact that Langford's statement did not affirmatively state his willingness to testify on the defendant's behalf. See *id.* ¶ 41. The supreme court suggested that the trial court could "infer" his willingness to testify, explaining: "on the first stage of review, the court is to take the allegations of the petition as true and construe them liberally. [Citation.] At this point, the court might infer that Langford was willing to provide the statement but not testify, or it might infer that Langford was willing to provide the statement and to testify. *We believe the latter*

*inference is consistent with the directive to construct the petition's allegations liberally.*" (Emphasis added.) *Id.*

¶ 27 The *Allen* court further held that although the content of Langford's statement conflicted with certain trial testimony, it nonetheless met the "forgiving standards of the first stage" of postconviction proceedings to avoid summary dismissal. *Id.* ¶ 43. Thus, our supreme court reversed and remanded for second-stage postconviction proceedings. *Id.* ¶ 46.

¶ 28 Applying its holdings to the instant case, we conclude that *Allen* has undermined the grounds for our May 2014 order affirming the summary dismissal of the defendant's postconviction petition. Our prior order relied largely upon the lack of a notarization of Davis's statement. However, the *Allen* court characterizes this as a "procedural" defect that does not warrant summary dismissal and indicates that such a statement qualifies as "other evidence" satisfying section 122-2 of the Act. Moreover, although Davis's statement failed to specify his willingness to testify on the defendant's behalf, *Allen* indicates that a reviewing court should "infer" that he would do so, under "the directive to construe the petition's allegations liberally" at the first stage of review. *Id.* ¶ 41.

¶ 29 Furthermore, as the lack of notarization no longer bars the use of Davis's statement to support the defendant's petition, we conclude that the defendant satisfied the standard for first-stage review of a postconviction petition claiming ineffective assistance of counsel. That standard was articulated by our supreme court in a factually analogous case, *People v. Tate*, 2012 IL 112214. In *Tate*, the defendant claimed that his trial counsel provided ineffective assistance by failing to call a number of exculpatory witnesses, and he supported his petition with affidavits from those witnesses stating that he was not at the crime scene. *Id.* ¶¶ 4-5.

¶ 30 Our appellate court had affirmed the trial court's summary dismissal of the *Tate* petition, applying the standard derived from *Strickland v. Washington*, 466 U.S. 668 (1984), that the defendant "must *demonstrate* ineffective assistance by *showing* that his counsel's performance was deficient and that this deficient performance prejudiced the defense." (Emphases in original.) *Tate*, 2012 IL 112214, ¶ 18. However, our supreme court disagreed, concluding that a "different, more lenient formulation" of the *Strickland* standard applied. *Id.* ¶ 19. Our supreme court explained: " 'At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced.' " (Emphases in original.) *Id.* (quoting *People v. Hodges*, 234 Ill. 2d 1, 17 (2009)). Our supreme court further explained: "This 'arguable' *Strickland* test demonstrates that first-stage postconviction petitions alleging ineffective assistance of counsel are judged by a lower pleading standard than are such petitions at the second stage of the proceeding." *Id.* ¶ 20.

¶ 31 Notably, in finding that the *Tate* petition met this lower first-stage standard, our supreme court rejected the State's argument that the defendant's trial counsel had a strategic reason for not calling one of the exculpatory witnesses. Our supreme court held that: "The State's strategy argument is inappropriate for the first stage, where the test is whether it is arguable that counsel's performance fell below an objective standard of reasonableness and whether it is arguable that the defendant was prejudiced." *Id.* ¶ 22. Instead, the *Tate* court found that such a trial strategy argument was "more appropriate to the second stage *** where the petitioner's burden is to make a substantial showing of a constitutional violation." *Id.* Thus, the supreme

court in *Tate* remanded the case for further proceedings. *Id.* ¶ 25.

¶ 32                                                   CONCLUSION

¶ 33        Applying *Tate*'s holding to this case, the trial court's original basis for its summary dismissal of the defendant's postconviction petition was improper. That is, although the trial court found that it was sound trial strategy by the defendant's counsel not to call Davis as a witness, under *Tate* such a "strategy argument" regarding counsel's decision not to call a witness "is inappropriate for the first stage" of review. *Id.* ¶¶ 21-22. Rather, the relevant test is simply whether "it is arguable that counsel's performance fell below an objective standard of reasonableness" and that the defendant was prejudiced. *Id.* ¶ 22. As in *Tate*, we find that the defendant has presented an "arguable" claim that her trial counsel was ineffective in not calling Davis as a witness, and thus her postconviction petition was sufficient to avoid first-stage summary dismissal. On remand, the trial court should conduct second-stage postconviction proceedings.

¶ 34        Accordingly, we vacate our May 14, 2014 order, reverse the trial court's summary dismissal of the defendant's postconviction petition and remand for further proceedings.

¶ 35        Reversed and remanded.