2022 IL App (1st) 211100-U

FIFTH DIVISION
June 30, 2022

No. 1-21-1100

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 8598 |
| | ) | |
| LATRICE BURNS, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Justices Hoffman and Connors concurred in the judgment.

ORDER

¶ 1    *Held*:  The trial court did not err by dismissing the defendant's postconviction petition at the second stage.

¶ 2    On August 25, 2005, following a jury trial, the defendant-appellant, Latrice Burns, was convicted of first-degree murder and armed robbery on a theory of accountability and subsequently sentenced to an aggregate term of 26 years' imprisonment (20 years for the murder conviction and 6 years for the armed robbery conviction to be served consecutively). On direct appeal, this court affirmed Ms. Burns' conviction and sentence. Ms. Burns subsequently filed a postconviction

petition, and the State filed a motion to dismiss at the second stage of the postconviction proceedings. The circuit court of Cook County dismissed all but one of Ms. Burns' claims, which it allowed to proceed to a third-stage evidentiary hearing. After the evidentiary hearing, the trial court denied the postconviction petition. On appeal, Ms. Burns argues that the trial court erred by denying her claim in the postconviction petition, which alleged that her trial counsel was ineffective for not calling her codefendant, Dorwin Davis, as a witness in her trial. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 3                                    BACKGROUND

¶ 4     Following a jury trial in August 2005, Ms. Burns was convicted of first-degree murder and armed robbery based on a theory of accountability. The State's theory at trial was that Ms. Burns was accountable for the actions of Dorwin Davis and William Kenlow, who robbed and shot to death Lionell Reed, on March 17, 2005. The State's primary evidence against Ms. Burns consisted of statements she made to investigating authorities after the incident. Ms. Burns, who testified in her own defense at trial, denied that she knew of Mr. Davis and Mr. Kenlow's plan to rob Mr. Reed. She asserted that her statements to investigators were coerced and untruthful.

¶ 5     At trial, Assistant State's Attorney Cathleen Dillon testified regarding a videotaped statement made by Ms. Burns after the shooting. In that statement, which was presented to the jury, Ms. Burns stated that Mr. Davis was her ex-boyfriend and she knew Mr. Kenlow from the neighborhood. In the afternoon of March 17, 2005, Mr. Davis called Ms. Burns to ask if she would drive him to buy shoes from a man who sold them on the street at a particular location. Later, Ms. Burns picked up Mr. Davis and Mr. Kenlow and drove them to "get the shoes" from Mr. Reed, who was purportedly at 95th Street and the Dan Ryan Expressway (Dan Ryan). According to Ms. Burns' statement, on the way, Mr. Kenlow asked Mr. Davis how they were going to obtain the

shoes. Mr. Davis said he would "[beat] the man ass and take the shoes," and Mr. Kenlow added that "we might as well lay him down or lay him out and take the car too." Ms. Burns stated that she understood this to mean that Mr. Kenlow suggested that he and Mr. Davis would shoot Mr. Reed. Mr. Davis responded that they only needed to take the shoes.

¶ 6    After they arrived at 95th Street and the Dan Ryan, Mr. Davis and Mr. Kenlow did not see Mr. Reed. Mr. Davis used Ms. Burns' cellular telephone to call Mr. Reed, who directed Mr. Davis to meet him at a nearby location. Ms. Burns drove Mr. Davis and Mr. Kenlow to that location and parked her car. Mr. Davis left to get the shoes while Mr. Kenlow stayed in the car with Ms. Burns. In the statement, Ms. Burns claimed that she thought Mr. Davis would only "beat up" Mr. Reed and take the shoes. While Ms. Burns and Mr. Kenlow waited in Ms. Burns' car, Mr. Kenlow received a call from Mr. Davis asking for $10 because he was "short." Mr. Kenlow left the car to meet Mr. Davis. Ms. Burns waited in the car with the headlights off for Mr. Davis and Mr. Kenlow.

¶ 7    A few minutes later, Ms. Burns heard a gunshot and saw Mr. Davis and Mr. Kenlow running toward her car, with Mr. Davis carrying a box of shoes. Ms. Burns unlocked the car door for Mr. Davis and Mr. Kenlow. When Ms. Burns asked what happened, they told her to "go" because someone was shooting. Ms. Burns turned her headlights on and drove away at a high rate of speed. However, soon after, Ms. Burns' car was stopped by the police.

¶ 8    Detective Cedric Parks testified about a statement that Ms. Burns made to him after the incident, which recounted largely the same events that Ms. Burns described in her videotaped statement. Additionally, Ms. Burns told Detective Parks that after her car was stopped, police recovered a firearm from the backseat.

¶ 9    The State presented evidence that Mr. Reed died of a gunshot wound to the chest. Additionally, a test for gunshot residue was positive for Mr. Davis and negative for Mr. Kenlow.

¶ 10    Testifying in her defense at trial, Ms. Burns asserted that she knew nothing about plans to rob and kill Mr. Reed, and that she thought Mr. Davis was planning to buy shoes. She testified that Mr. Davis asked her whether she would take him to buy shoes from a man who sold them, and though she was reluctant at first, she eventually agreed. Later, she drove Mr. Davis and Mr. Kenlow to 95th Street and the Dan Ryan to make the purchase. Ms. Burns denied that Mr. Davis and Mr. Kenlow discussed planning a robbery on the way to meet Mr. Reed. When they arrived and did not see Mr. Reed, Mr. Davis used Ms. Burns' cellular telephone to call him, and then directed Ms. Burns to a location nearby. After Mr. Davis made a second call, he left the car while Mr. Kenlow remained in the car. Mr. Davis then called Mr. Kenlow to ask for $10 because he was "short." Mr. Kenlow agreed to bring $10 to Mr. Davis. When Mr. Kenlow left the car, Ms. Burns believed he was going to give Mr. Davis $10. Ms. Burns then heard a gunshot and saw Mr. Davis and Mr. Kenlow running toward her car. This prompted Ms. Burns to think that someone may have been chasing or shooting at them. Mr. Davis and Mr. Kenlow entered the car and told Ms. Burns to "go" because someone was shooting. Ms. Burns drove away and was soon stopped by the police.

¶ 11    Ms. Burns also testified at trial that when she was being questioned by detectives, she repeatedly told them that she did not know about the robbery but was told she was lying. Additionally, Detective Parks told Ms. Burns that Mr. Davis and Mr. Kenlow had implicated her in the robbery; that all three of them would be charged with murder; and that she needed to "start talking." According to Ms. Burns, Detective Parks told her that if she said she knew about the robbery, she could go home. Eventually, she told the detective "what he wanted to hear." Ms. Burns testified that her statement to the assistant state's attorney was true "except for the part about me knowing about the robbery." Ms. Burns also testified that she thought that what she said on the videotape, during the investigation, did not matter because she would be going home.

¶ 12    Following deliberations, the jury found Ms. Burns guilty of first-degree murder and armed robbery based on a theory of accountability. She was sentenced to 20 years' imprisonment for the murder of Mr. Reed and 6 years' imprisonment for the armed robbery, to be served consecutively.

¶ 13    On direct appeal, Ms. Burns argued that her guilt was not established beyond a reasonable doubt and that she was entitled to a new trial because: (1) the trial court prevented her from fully presenting her defense; (2) her trial counsel was ineffective for failing to request jury instructions on withdrawal from the plan to murder Mr. Reed and a separate jury verdict form for felony murder; (3) her trial counsel presented a final argument that diminished the effectiveness of her character witnesses; and (4) the State denied her a fair trial by improperly denigrating that same character evidence. On August 27, 2008, this court affirmed Ms. Burns' conviction and sentence. *People v. Burns*, No. 1-06-1026 (2008) (unpublished opinion under Supreme Court Rule 23). On January 28, 2009, our supreme court denied her petition for leave to appeal. See *People v. Burns*, 231 Ill. 2d 638 (2009).

¶ 14    Ms. Burns then filed a *pro se* postconviction petition on September 10, 2010, which is the subject of the instant appeal. In her petition, Ms. Burns alleged, among other issues, that her sixth amendment right to effective assistance of counsel (U.S. Const., art. VI) was violated because her trial counsel refused to "try to get one of [her] 'willing codefendants' on the stand" despite her request that he do so. Ms. Burns averred that her codefendant could have testified to the fact that she "knew nothing about a scam" to commit a crime. However, she claimed that her counsel refused out of concern that the codefendant might "flip the script" on her.

¶ 15    Attached to Ms. Burns' postconviction petition was an affidavit from Mr. Davis, in which he recounted the events of March 17, 2005. In his affidavit, Mr. Davis testified that he called Ms. Burns to ask if she could drive him to buy shoes, and that she later picked him and Mr. Kenlow up

in her car. While Ms. Burns was driving, Mr. Davis called the person from whom he planned to buy the shoes and agreed to meet at a specific location. "Nothing was discussed" on the way to that location and they listened to the car radio. When they arrived at 95th Street, Ms. Burns let Mr. Davis out of the car and went to park. Between the time that Mr. Davis called Ms. Burns earlier in the day and when he exited the car, they "never talked about anything concerning any crimes or criminal behavior because there was nothing taking place." Mr. Davis further testified that "the only thing [Ms. Burns] was doing is driving me to purchase some [shoes] and that is the extent [of] her knowledge of anything that transpired that day."

¶ 16    On December 3, 2010, the trial court dismissed Ms. Burns' petition as frivolous and patently without merit. In part, the court found that trial counsel's explanation for not calling Mr. Davis—fear that he could testify unfavorably—supported the conclusion that counsel's decision was sound trial strategy. Though this court initially affirmed the trial court's ruling, after a supervisory order from our supreme court on December 21, 2015, we reversed our ruling and remanded the case back to the circuit court for second-stage postconviction proceedings. *People v. Burns*, 2015 IL App (1st) 121928.

¶ 17    On remand to the circuit court of Cook County, Ms. Burns was appointed postconviction counsel, who requested leave to file an amended postconviction petition. The amended petition alleged that trial counsel was ineffective for: (1) failing to file a motion to suppress statements; (2) failing to call Mr. Davis as a witness; (3) failing to communicate a plea deal; and (4) not striking two jurors for cause. The amended petition additionally alleged that the trial court erred by not striking the two jurors for cause and that Ms. Burns was denied a fair trial since jurors spoke to Mr. Reed's family during the trial. The trial court granted Ms. Burns leave to file the amended petition. The petition attached Mr. Davis' original affidavit, as well as a second affidavit from him,

which stated he was willing to testify at the time of her trial and remained willing to testify. The State filed a motion to dismiss the petition, which alleged that Ms. Burns did not meet her burden. The State also argued that the postconviction petition was untimely.

¶ 18    On June 22, 2020, in a written order, the trial court granted the State's motion to dismiss the postconviction petition as to all claims except for the claim regarding trial counsel's failure to communicate a plea offer. Regarding the timeliness of the motion to dismiss, the court ruled that while the petition was untimely, the late filing was not due to Ms. Burns' culpable negligence. As such, it denied the State's motion to dismiss on that basis and reviewed the postconviction petition on its merits before dismissing all but one of the claims. The remaining claim pertained to trial counsel's failure to communicate a plea offer to Ms. Burns.

¶ 19    On August 10, 2021, following an evidentiary hearing, the trial court rejected Ms. Burns' remaining claim and denied her postconviction petition. On August 30, 2021, Ms. Burns filed her notice of appeal.

¶ 20                                    ANALYSIS

¶ 21    As an initial matter, we note that the State argues that the original postconviction petition was untimely and, as a result, the amended petition is also untimely. It argues that the untimeliness of the postconviction petition should bar our review of the matter since Ms. Burns did not prove the delay was not due to her culpable negligence. In other words, the State avers that because Ms. Burns filed an untimely petition without just cause, the trial court lacked jurisdiction to consider the petition, and in turn, we lack jurisdiction to hear this appeal.

¶ 22    If a defendant does not file a writ of *certiorari* with the United States Supreme Court, he or she must file a postconviction petition within six months after the deadline for filing a *certiorari* petition, unless the defendant "alleges facts showing that the delay was not due to his or her

culpable negligence." 725 ILCS 5/122-1(c) (West 2010). Under United States Supreme Court Rule 13, a petition for writ of *certiorari* seeking review of a judgment in a state's court of last resort must be filed within 90 days of the entry of that state court's judgment. Sup.Ct. R. 13. Accordingly, a defendant in Illinois has nine months after the entry of our supreme court's order to file a postconviction petition if a writ of *certiorari* is not filed with the United States Supreme Court.

¶ 23    In this case, our supreme court entered its order on January 28, 2009. Ms. Burns did not file a writ of *certiorari* with the United States Supreme Court and, as such, she had until October 2009 to file her postconviction petition. She did not file it, however, until September 10, 2010. Accordingly, her postconviction petition was untimely. Nevertheless, untimely postconviction petitions may be allowed if a defendant proves the delay was not due to his or her own culpable negligence. Culpable negligence "contemplates 'something greater than ordinary negligence and is akin to recklessness.' " *People v. Johnson*, 2017 IL 120310, ¶ 26 (quoting *People v. Boclair*, 202 Ill. 2d 89, 108 (2002)). "It is well settled that the Postconviction Act "must be liberally construed to afford a convicted person an opportunity to present questions of deprivation of constitutional rights.' " *People v. Craighead*, 2015 IL App (5th) 140468, ¶ 15 (quoting *People v. Correa*, 108 Ill. 2d 541, 546 (1985)).

¶ 24    In an affidavit, Ms. Burns stated that when she initially tried to file her postconviction petition, she was told she did not have the requisite paperwork since she was missing "the denial briefs." She attested that once she received those "denial briefs," she filed her postconviction petition within 30 days. While it is unclear what Ms. Burns means by, "denial briefs," we are required to liberally construe the Postconviction Act to allow a convicted person an opportunity to present his or her issue. When liberally construed, it appears that the delay was not due to Ms. Burns actions nor was the delay within her control as an incarcerated individual. Thus, we cannot

say that her failure to file a timely postconviction petition was due to her culpable negligence. Accordingly, we reject the State's argument and find that the trial court had jurisdiction to consider Ms. Burns' postconviction petition. At the conclusion of her third-stage evidentiary hearing, Ms. Burns filed a timely notice of appeal, and as a result, we have jurisdiction to hear this appeal. See Ill. S. Ct. R. 606, 651(a) (eff. July 1, 2017).

¶ 25 Turning to the merits before us, on appeal, Ms. Burns argues the trial court erred by dismissing her postconviction petition's claim of ineffective assistance of counsel for failing to call Mr. Davis as a witness at the second stage of the proceedings. Notably, she does not challenge the dismissal of any other claims in her postconviction petition, which was ultimately denied. She argues that at the second stage of the postconviction proceedings, the court is to assume all well-pleaded facts as true, but instead the trial court in this case, made credibility determinations, which were more akin to a third-stage evidentiary hearing. In doing so, the trial court improperly dismissed her ineffective assistance of counsel claim concerning trial counsel's failure to call Mr. Davis as a witness. She asks us to reverse the trial court's judgment and remand this matter to the trial court for further proceedings on that claim.

¶ 26 The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a criminal defendant with a mechanism, where he or she can argue that his or her conviction and sentence were the result of a substantial denial of his or her constitutional rights under the United States Constitution, Illinois Constitution, or both. *People v. English*, 2013 IL 112890, ¶ 21. A postconviction proceeding is not an appeal from the judgment, but rather, it is a collateral attack on the trial court proceedings. *English*, 2013 IL 112890, ¶ 21. To receive postconviction relief, a defendant must show a substantial deprivation of his or her federal or state constitutional rights in

the trial court proceedings, which produced the challenged judgment. *English*, 2013 IL 112890, ¶ 21.

¶ 27 A postconviction proceeding operates in three stages. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). If a defendant's postconviction petition survives the first stage, the proceedings advance to a second stage where counsel is appointed and granted leave to amend the petition into an appropriate legal form. *People v. Turner*, 187 Ill. 2d 406, 416-17 (1999). If the petition makes a substantial showing of a constitutional violation, the matter advances to the third stage, which is an evidentiary hearing to determine the validity of the petition's factual allegations. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). "[T]he well-pleaded allegations in the petition and supporting documents will be accepted as true unless it is affirmatively demonstrated by the record that a trier of fact could never accept their veracity." *People v. Robinson*, 2020 IL 123849, ¶ 60. At the second stage, "the court is concerned solely with determining whether the petition's allegations sufficiently demonstrate a constitutional infirmity which would necessitate relief under the Act." *People v. Jones*, 399 Ill. App. 3d 341, 357 (2010). "Factual disputes raised by the pleadings require a determination of the truth or falsity of the supporting documents which cannot be properly made at a dismissal hearing; they can only be resolved through a third-stage evidentiary hearing." *Jones*, 399 Ill. App. 3d at 357. A trial court's dismissal of a postconviction petition is reviewed *de novo*. *People v. Richardson*, 189 Ill. 2d 401, 408 (2000).

¶ 28 Here, the claim at issue in Ms. Burns' postconviction petition alleges she received ineffective assistance of counsel when her trial counsel failed to call Mr. Davis as a witness. A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Henderson*, 2013 IL 114040, ¶ 11.

¶ 29 To prevail on such a claim of ineffective assistance of counsel, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). To establish deficient performance, a defendant must show his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219 (2004) (citing *Strickland*, 466 U.S. at 687). "Effective assistance of counsel refers to competent, not perfect representation." *Evans*, 209 Ill. 2d at 219 (quoting *People v. Stewart*, 104 Ill. 2d 463, 491-92 (1984)). Mistakes in trial strategy or tactics do not necessarily render counsel's representation defective. See *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 79 (finding that the trial counsel's decision to not call the codefendant to testify was trial strategy and thus counsel did not render ineffective assistance of counsel). Typically, "decisions concerning which witnesses to call at trial and what evidence to present on defendant's behalf ultimately rest with trial counsel." *Wilborn*, 2011 IL App (1st) 092802, ¶ 79.

¶ 30 To establish the second prong of *Strickland*, prejudice, a defendant must show that "but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different." *People v. Houston*, 229 Ill. 2d 1, 4 (2008). A "reasonable probability" has been defined as a probability which would be sufficient to undermine confidence in the outcome of the trial. *Houston*, 229 Ill. 2d at 4. "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35.

¶ 31 Looking at the deficient performance prong, the decision to not call Mr. Davis was clearly a matter of trial strategy. Ms. Burns attested that her trial counsel chose not to call him as a witness because counsel was afraid that he might change his testimony on the witness stand and negatively impact Ms. Burns' case. Ms. Burns points to the trial court's statements regarding possible

impeachment of Mr. Davis, since he had a prior relationship with Ms. Burns, as a showing that the trial court improperly made credibility determinations. However, when looking at an ineffective assistance of counsel claim, a court has to review trial counsel's decisions and the propriety of any decision. See *People v. Coleman*, 183 Ill. 2d 366, 397 (1998) ("a defendant must overcome the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence"). The trial court's statements regarding impeachment of Mr. Davis pertained to trial counsel's *decision* to not call him as a witness. The statements had nothing to do with the *credibility* of Mr. Davis as a witness or the veracity of his affidavit. Indeed, Mr. Davis' testimony, at best, would have been cumulative with Ms. Burns' trial testimony. And, the State could reasonably be expected to bring up his motivation to lie in order to help Ms. Burns, given their prior relationship.

¶ 32    Further, in Mr. Davis' affidavit, he seemingly does not acknowledge that he was the shooter. Given that he was found with gunshot residue on his hand, his potential impeachment on that issue, and his prior dating relationship with Ms. Burns, it seemed reasonable trial strategy for Ms. Burns' counsel to forego him as a witness on her behalf. Even if Mr. Davis was willing to admit that he was the shooter, Ms. Burns' trial counsel may not have wanted the actual shooter to be associated with Ms. Burns and for the jury to make an inference, connecting the two. As such, trial counsel's decision to refrain from calling Mr. Davis as a witness was not deficient but was rather sound trial strategy. See *People v. Enis*, 194 Ill. 2d 361, 378 (2000) (stating that decisions on who to call as a witness on the defendant's behalf is a matter of trial strategy, left to the discretion of counsel).

¶ 33    Under these facts and circumstances, we cannot say that counsel's performance was deficient. Since Ms. Burns' ineffective assistance of counsel claim fails to meet the deficient

performance prong, we need not look at whether trial counsel's actions prejudiced Ms. Burns. See *Enis*, 194 Ill. 2d 361, 377 (stating that the failure to satisfy either prong of the *Strickland* test, precludes a finding of ineffective assistance of counsel). As trial counsel's performance was not ineffective on the face of the postconviction petition, Ms. Burns did not make a substantial showing of a constitutional violation. Therefore, the trial court did not err by dismissing Ms. Burns' claim of ineffective assistance of trial counsel on that basis at the second stage of proceedings.

¶ 34                                      CONCLUSION

¶ 35    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 36    Affirmed.